J-S30015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  J.I.K., A/K/A I.K., A/K/A D.J.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  J.R., NATURAL FATHER | No. 127 WDA 2018 |

Appeal from the PCRA Order December 20, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CP-02-AP-000020-2017

BEFORE:  BENDER, P.J.E., STABILE, J., and STRASSBURGER, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 16, 2018**

J.R. (Father) appeals from the order entered on December 20, 2017, that granted the petition filed by the Allegheny County Office of Children, Youth and Families (CYF) to involuntarily terminate Father's parental rights to J.I.K. (Child).[1]  We affirm.

Father's brief to this Court contains the following, succinct statement of the case:

> Appellant, J.R., … is the [n]atural [f]ather of the [m]inor Child….  Child was born [i]n November [] 2015.  [C]hild was removed from Mother by Children, Youth, and Family Services[] (CYF) at the hospital on November 22, 2015[,] because CYF had been involved with Mother's other children since 2012.  [C]hild was adjudicated dependent on February 3, 2016.  Father was not identified until May 2016 after he took a paternity test and two other men were previously excluded by DNA tests.  CYF subsequently determined that [F]ather was not an appropriate placement due to his conviction in 1999 for statutory sexual assault of an eleven-year old child and an extensive subsequent

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] S.M.K. (Mother) voluntarily relinquished her parental rights to Child as noted in the December 20, 2017 order.  She has not appealed.

history of criminal behavior and PFA's filed by multiple women. Father also had a history of significant neurological and mental health problems. In December 2016, the Juvenile Court found aggravated circumstances against Father.

A Petition To Terminate Parental Rights (hereafter, "TPR") against Father[] was filed in February, 2017, based on Sections 2511(a)(2), (5), (8), and (b). A contested TPR hearing was held on September 22, 2017 before the Honorable Guido DeAngelis. Judge DeAngelis entered an order dated December 20, 2017[,] terminating the parental rights of [Father] and a Notice of Appeal was timely filed.

Father's brief at 2-3 (citations to the record omitted).[2]

In his brief, Father raises the following two issues for our review:

1. Is the trial court's finding of grounds for involuntary termination of [Father's] parental rights under 23 Pa.C.S. § 2511(a)(2)[,] (5) and (8) proven by a showing of clear and convincing evidence?

2. Is the trial court's finding that termination of parental rights serves the developmental, physical and emotional needs and welfare of [C]hild  proven by clear and convincing evidence under 23 Pa.C.S. § 2511(b)?

*Id.* at 1 (unnecessary capitalization omitted).

We review an order terminating parental rights in accordance with the

following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury

_____

[2] We note that although represented by counsel, Father himself did not attend the September 22, 2017 TPR hearing.

verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis

concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

The trial court here terminated Father's parental rights pursuant to section 2511(a)(2), (5), (8) and (b). In order to affirm, we need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In his brief, Father argues that subsections (a)(5) and (a)(8) do not apply to him because he never had physical custody of Child. Rather, he

centers his argument on subsection (a)(2). We therefore have chosen to address and analyze the court's decision to terminate Father's parental rights under section 2511(a)(2) and (b), which provide:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect, or refusal; (2) such incapacity, abuse, neglect, or refusal caused the child to be without essential

parental care, control, or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied. **See In re Adoption of M.E.P.**, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under subsection 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. **In re A.L.D.** 797 A.2d 326, 337 (Pa. Super. 2002).

The thrust of Father's argument relating to subsection 2511(a)(2) is that CYF failed to meet its burden of proving the grounds for termination of his parental rights because, despite his mental impairments, he "demonstrated a willingness and the ability to perform his parental duties at a minimal level and that he acted 'affirmatively' to maintain his relationship with his child." Father's brief at 14. With regard to subsection 2511(b), Father asserts that CYF failed to present sufficient evidence relating to the bond between him and Child. Instead, he contends that the court's finding that no such bond existed was not supported by evidence in the record. Moreover, Father argues that although the record evidence supports the fact that foster mother and Child are "deeply bonded," he complains that that is not the "required inquiry." **Id.** at 19. Rather, without evidence as to the effect the termination would have on Child relative to the Father/Child bond, Father again contends that CYF did not meet its burden of proof.

We have reviewed the certified record, the briefs of the parties, the applicable law, and the comprehensive opinion authored by Judge DeAngelis of the Court of Common Pleas of Allegheny County, dated December 20, 2017. We conclude that Judge DeAngelis's well-reasoned opinion correctly disposes of the issues raised by Father in this appeal and we discern no abuse of discretion or error of law. Accordingly, we adopt Judge DeAngelis's opinion as our own and affirm the December 20, 2017 order on that basis.

Order affirmed.

Judge Stabile joins this memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/2018

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY
PENNSYLVANIA
FAMILY DIVISION
JUVENILE COURT SECTION

IN THE INTEREST OF:                    ORPHANS' COURT

██████████ J.I.K., aka
██████████ I.K., aka                   No. CP-02-AP-0020-2017
██████████, D.J.K.
A Minor

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND
ORDER OF COURT**

Before the Court are Petitions for the Involuntary Termination of Parental
Rights filed by Allegheny County Office of Children Youth and Families, hereafter
referred to as CYF or the County Agency against the subject named parents with
respect to the above-named subject child, and after trial conducted before the Court
on September 22, 2017 and after consideration of the testimony and evidence of
record the Court enters the following Findings:

FINDINGS OF FACT

1. The subject child is ██████ J.I.K. ██████ with a date of birth of November
   ██, 2015.
2. The biological mother of the subject child is ██████ S.M.K. ██████ and the
   subject father of the subject child is ██████ J.E.R. ██████, Jr. and said

1

subject father was subsequently established by genetic testing on or about May 25, 2016 and subject father filed an Acknowledgement of Paternity on June 29, 2016.

3. The subject mother consented to termination of her parental rights as to the subject child. Prior to the birth of the subject child the County Agency was familiar with the subject mother through dependency proceedings regarding the subject mother's older two (2) children. Through the course of the cases involving subject mother's older children, the County Agency had concerns about the subject mother's intellectual capacity, her mental health, and her general parenting ability as it relates to the subject child in this case. While represented by legal counsel, the subject mother knowingly and voluntarily executed a consent to termination of her parental rights to the subject child on December 20, 2016. The testimony by the County Agency caseworker in the trial transcript beginning on page 54 outlines the circumstances and procedure in which the consent to adoption was procured and established by the County Agency. As the record reflects, the applicable statutory time period for the consent to adoption had past for confirmation and the record supported ratification of the subject mother's consent to adoption. Based on the record, an Order confirming subject mother's consent to termination of her parental rights as to the subject child was entered by the Court subsequent to the date of trial, September 22, 2017, and was made part of the record.

4. The dependency proceedings in this case conducted by the Juvenile Court commenced through an Emergency Custody Authorization Order which resulted in the subject child being placed in a non-kinship foster home on November 23, 2015 and the subject child has remained there in this pre-adoptive home since the aforestate date.

2

5. Aggravated Circumstances Orders were entered against the subject mother and subject father on August 17, 2016 and December 7, 2016 respectively.

6. At such time that the subject father's paternity was established, the County Agency conducted an investigation to assess the subject father as a placement resource for the subject child. The investigation determined that the subject father was not fit as a placement option due to his extensive history of violent behavior and criminal behavior, the latter including sexual crimes and violent crimes. In September 1999, the subject father was convicted of Statutory Sexual Assault and Corruption of a Minor for raping an 11 year old girl. In July 2001, father was charged with Corruption of Minors, Harassment and Stalking. He ultimately was convicted of Harassment and Stalking in April 2002. In October 2014, father was convicted of Resisting Arrest and Simple Assault. Father has been named defendant in no fewer than five (5) Protection From Abuse orders. In several of these cases, subject father was subsequently charged with indirect criminal contempt for violating the underlying PFA orders. The earliest of these orders dates back to August 2009 and the most recent remained in effect until June of this year. These factual findings are corroborated both in the testimony at trial and the exhibits entered into evidence by the County Agency.

7. As part of the initial assessment, the County Agency learned that the subject father was not actively receiving mental health treatment despite experiencing paranoia and having attempted suicide. In addition, the County Agency discovered that the subject father was not engaged in anger management treatment even though he was court ordered to do so as a result of his PFA violations.

3

8. The County Agency then proceeded to complete Family Service Plans setting forth goals for the purposes of subject father's reunification with the subject child. These goals included: 1. Securing and maintaining appropriate housing; 2. Securing and maintaining employment; 3. Successfully completing parenting classes and consistently attending visits with the subject child through Achieva; 4. Completing a risk assessment and following all resulting recommendations, particularly those relating to anger management and domestic violence; and 5. Completing individual and interactional psychological evaluations and following all resulting recommendations. The subject father, consistent with the evidence of record, did not successfully achieve or complete any of the Family Service Plan goals nor did he attend the termination of parental rights trial which took place on September 22, 2017. The County Agency could not verify father's compliance concerning his housing goal due to the frequency in which he changed residence and his refusal to provide the County Agency with his address, therefore a home assessment could not be completed. Subject father was unemployed when the County Agency began working with him towards reunification, he was employed for a brief period of time and at the time of the trial scheduled in the Instant Case, the County Agency could not confirm the subject father's employment status. Further, the evidence of record clearly demonstrates that the subject father never developed the capacity for safe parenting or even a consistent, demonstrative interest in acting as a parent for the subject child. His visitation with the subject child at the Achieva organization for the purposes of parenting instruction was poorly attended to where his visits were reduced to one (1) visit every other week. In addition, subject father frequently fell asleep during his supervised visits with the subject child and the staff at the Achieva organization had to

4

remove the mat from the reading room where father was sleeping. The subject father, during the visits that he did attend, failed to remain engaged enough to protect the subject child from dangers. At times he ignored the subject child by playing on his telephone after receiving verbal prompts and corrections from the Achieva staff. Subject father's inattentiveness resulted in the subject child placing himself in danger such as the subject father failing to notice the subject child wonder out of the room and into the hallway. The Achieva personnel stated that the subject father often became angry and threatening in response to their parenting directions. The subject father attempted to intimidate the Achieva personnel and the Achieva staff had to made arrangements for the purposes of protecting themselves. The director of Achieva's Parenting Education Program Ms. Colleen Sokira, testified at trial that the Achieva staff never felt comfortable enough with the subject father's ability or attentiveness as a parent to place the subject child in his unsupervised care.

9. The subject father did not demonstrate necessary progress or compliance with his mental health treatment goals. A risk assessment interview with the subject father was completed by Court Expert Dr. Robert F. Koufal on November 18, 2016, wherein Dr. Koufal diagnosed father with a number of diagnosis's as well as a clinical finding of border line intellectual functioning. Dr. Koufal concluded that the subject father had limited insight and understanding of the impact of his prior sexual offense as it relates to the present case before the Court. Further, Dr. Koufal also concluded that the subject father posed a medium-to-medium/high risk to reoffend in a violent manner consistent with his past crimes. By way of recommendations in order to mitigate the risk that the doctor concluded, it was recommended that the subject father receive on-going mental health treatment with a

professional experienced in anger and violent containment and that the subject father receive a neurological evaluation and follow any resulting recommendations.

10. The subject father also completed an individual interactional psychological evaluation with Dr. Patricia Pepe, Court Expert, on November 15, 2016. Dr. Pepe diagnosed the subject father with: 1. Unspecified Neurocognitive Disorder; 2. Intermittent Explosive Disorder; and 3. Anti-social Personality Disorder. Dr. Pepe made further findings and observed that the subject father appeared to perceive a distorted view of reality, and he showed an inclination to project responsibility for his actions on to others. This combined with subject father's history with violence led Dr. Pepe to conclude that father remains a very high risk for committing dangerous and aggressive behaviors. Dr. Pepe concluded that subject father failed to demonstrate an adequate emotional stability as needed for safe parenting. As a result of her findings, Dr. Pepe recommended that the subject father undergo extensive neurological and neuropsychological testing for additional diagnosis and treatment recommendations. With respect to current treatment recommendations, this expert indicated that the subject father should participate in mental health treatment with an emphasis on anger management and that absent long term treatment to address the issues concerning the subject father's needs, that the subject father would be unable to change his pattern of behavior.

11. In furtherance of the County Agency making reasonable efforts to assist the subject father consistent with the recommendations indicated, the County Agency made the necessary referrals for treatment and evaluation to address the subject father's needs, history and presentation. The County Agency caseworker, in this case, communicated with subject father to provided him

6

with contact information for care providers and the caseworker engaged in her own research to locate a facility capable of offering all of the recommended services at one location. These efforts were pursued by the County Agency with the understanding of the posture of this case, the amount of time that the child had been out of care and giving the subject father the opportunity for reunification. As a result of the reasonable efforts and in reality special efforts made by the County Agency, the subject father did not complete the recommended treatment. As this Court sees it, not only did the subject father fail to cooperate in the necessary treatment, he also failed to cooperate and communicate with the County Agency in order to demonstrate his motivation and desire towards reunification. The subject father never provided the County Agency with proof that he participated in out-patient psycho-therapy. The subject father did not complete anger management therapy; did not complete domestic violence therapy subsequent to his evaluations with Dr. Pepe and Dr. Koufal and did not pursue or obtain the neurological and neuropsychological examinations as recommended. Most telling, was the testimony by the County Agency caseworker of her communication with subject father who indicated to the caseworker that he was not participating in the various treatments recommended by the two (2) Court Experts because he believed that he did not need the recommended treatments and that he also believed he would never receive full custody of the subject child, so he was disinclined to cooperate with the County Agency.

12. In making the following findings concerning the mandates of **Sections 2511(a)** and **2511(b)** as applicable to this case particularly involving the subject father, this Court has carefully reviewed the testimony of record as a whole, particularly the testimony of the County Agency caseworker and has

reviewed all of the Exhibits and in particular County Agency Exhibit #8 replicating the reports of Dr. Koufal and Dr. Pepe.

13. The aforestated testimony and evidence, clearly and convincingly establishes the subject father's incapacities, reasons for the subject child removal which continued to exist and a clear indication that despite the County Agency's best efforts, the reasons set forth will not be remedied and this is confirmed both by the subject father's words and deeds.

14. With respect to those considerations incumbent upon the Court as outlined in **Section 2511(b),** the process begins with the fact that on November 23, 2015 the subject child was placed in the care of foster mother and that the subject child is now over two (2) years old and has been in the care of the foster mother all but two (2) days of her life. Further, the subject child is thriving in the care of the foster mother, is healthy and up to date medically, also is developmentally on track and is considered to be jovial and out-going consistent with the record testimony. It has been observed and concluded that the subject child is deeply bonded with the foster mother and appropriately looks to her for comfort and attention. Based on the record evidence, the Court recognizes the position and opinion of the County Agency caseworker that, in view of the subject child's bond with the foster mother and the subject father's lack of progress with his parenting goals, that the subject child's needs and welfare would be best served by termination of the subject father's parental rights and adoption by the foster mother. The opinions and recommendations of Dr. Pepe, serve as a foundation since they concur with the aforestated conclusion. Dr. Pepe observed subject child exhibit primary parental attachment to the foster mother that because the subject child has been with foster mother for his entire life, Dr. Pepe concluded that removing him from her care would be significantly harmful

8

to his psychological well-being and development. Dr. Pepe also observed and concluded that the foster mother, based on her clinical observation, possess excellent parenting skills and deep devotion towards the subject child. Dr. Pepe also noted that the subject father failed to comply with his basic recommendations for becoming a fit parent. The subject father's paternity of the subject child was confirmed over 18 months ago and the subject father has had ample time to rectify the issues that led the County Agency to take protective custody of the subject child, but has failed to do so. This Court specifically finds that a bond did not exist between the subject father and the subject child, that it would not be detrimental to the subject child to terminate the parental rights of the subject father and that it would best serve the needs and welfare of the subject child for the parental rights of the subject father to be terminated and for the child to proceed in the permanency direction of adoption.

15. The Court finds the testimony of County Agency caseworker Stacey Policicchio to be historic, sensible, forthright and consistent with a caseworker making reasonable efforts to fulfill the County Agency's obligations and attempt to reunify. Her testimony is convincing, credible and therefore her testimony is accepted.

16. The Court finds that the testimony of witness Colleen Sokiora from the Achieva program to be well informed, insightful, and experienced. Her testimony is found to be credible and therefore her testimony, as well, is accepted.

17. In reviewing the reports submitted by Exhibit of Dr. Koufal and Dr. Pepe, the Court finds the opinions and recommendations of the Court Experts to be scientific, methodical, sound, and factually based. The Court finds the opinions and recommendations by both of these Experts to be clear,

9

convincing and credible. Therefore, the testimony of both Court Experts are accepted.

## CONCLUSIONS OF LAW

The burden is upon the County Agency to establish the allegations in the Petitions filed. The Findings of Fact set forth by the Court are supported by the record as a whole and before the Court is manifest, competent evidence to support the termination of the rights of the subject father. The parties seeking termination must prove by clear and convincing evidence that the conduct of the parent satisfies the statutory grounds for termination set forth in **Sections 2511(a) 2, 5, 8** and **2511(b)**. Once a determination is made with regards to termination, the Court proceeds to examine the needs and welfare of the subject child considering the nature and status of the emotional bond, if any, between the parent and child with reflective assessment of the effect upon the child of permanently severing, if any, such bond. (See the case of **IN RE: L.M. 923 A2d 505 PA. (Super. 2007).** Once applying the statutory provisions of **2511(a) 2, 5, 8** and **2511(b)** further applying legal precepts annunciated in the relevant case law interpreting the parent's conduct and the application of the statutory provisions set forth in these prescribed grounds for the termination, this Court has no reservation in concluding as a matter of law that the evidence presented is clear and convincing to establish by competent evidence the allegations in the instant petitions and the Count Agency has sustained its burden.

Specifically, in establishing the Court's conclusions of law which follow, when weighing and judging the clear and convincing evidence provided by the record as a whole, the Court, in considering the relevant case law as previously stated has

10

also considered the subject father's mental impairments as a foundation to his incapacities to parent the subject child. **IN RE: ADOPTION OF: J.J. JAMES PHILIPS, II 511 PA. 590, 515 A2d 883 (1986).** Furthermore, the Court, in assessing and determining the needs and welfare of the subject child coupled with the child's permanency, the Court has also considered all relevant factors as set forth by the relevant case law. See **IN RE: A.S. 11 A3d 473, (PA. Super. Ct. 2010); IN RE: K.Z.S., 946 A2d 763; IN RE: K.M., 53 A3d 781 (PA. Super Ct. 2012).** Further, the Court has also considered the developmental, physical, spiritual and emotional needs and welfare of the subject child, given the totality of the circumstances, and need for permanency in the life of the subject child. See **IN RE: T.D., 949 A2d 910, (PA. Super. 2008).**

Based upon the foregoing Findings of Fact, the Court concludes as a matter of law:

1. That, based upon the applicable statutory period, the record provides clear and convincing evidence that subject father's repeated incapacity, abuse, neglect, or refusal to parent has caused the subject child to be out of the subject father's care. Despite reasonable efforts made the the County Agency and services available to the subject father, the conditions that brought the subject child into placement cannot or will not be remedied by the subject father within a reasonable period of time. The subject child has been in care for over two (2) years and the subject father having had a reasonable period of time to correct and remedy the current circumstances concerning the subject child has provided no evidence of compliance, cooperation or otherwise measures of safe parenting resulting in no promise of reunification. The subject father has failed to address the issue that led to the subject child's removal and placement. When considering the record as a whole, this Court concludes as a matter of law that the County Agency has

11

sustained its burden of proof and established by clear and convincing evidence that the parental rights of the subject father should be TERMINATED pursuant to **Sections 2511(a) 2, 5, and 8.**

2. That the evidence of record clearly demonstrates that it would not be detrimental to the subject child for the parental rights of the subject father to be terminated, that based on the record evidence including the testimony of the Court Expert, the subject child is in need for permanency. The subject child has obtained, in the home of the foster mother, a quality of life which meets the subject child's needs and welfare, and the best hope for the child to maintain a life that the subject child expects and deserves is to proceed in the permanency direction of adoption with the foster mother pursuant to **Section 2511(b).**

## ORDER OF COURT

In consideration of the foregoing Findings of Fact and Conclusions of Law it is hereby Ordered, Adjudged and Decreed that the parental rights of the subject father ~~████████████████████~~, Jr. to the subject child shall be and the same are hereby TERMINATED pursuant to **Sections 2511(a) 2, 5, and 8** and **2511(b).** Further, by way of this Order this Court proceeds to enter and incorporate that the consent to termination and adoption legally executed by the subject mother ~~████████████████~~ ~~████~~ shall be acknowledged, confirmed and ratified pursuant to and consistent with subject mother's consent. Confirmation of subject mother's Consent has been entered by electronic Order for purposes of the record. The stated Findings, Conclusions and Order entered herein, has been incorporated by reference as if set

12

forth fully at length and made a part of the Decree attached to the respective Petitions and incorporated into the electronically filed Orders this day with the entry of this Order herein.

Date: 12-20-17

BY THE COURT:

13